## WESTERVELT v. HAFF and others.

A mortgage executed by a tenant in common of lands, pending a suit in this court for their partition, becomes a lien on his interest in the land.

If the suit terminates in a decree for a sale, and a sale ensues at which the mortgagor becomes the purchaser of a part of the lands, and on receiving a deed is allowed towards the amount bid for his share of the proceeds of the whole premises, and omits to pay off the mortgage, it still continues to be a lien as against such mortgagor, upon the land bought by him at such sale.

And a mortgage executed by him after the sale, for a precedent debt, to one who relinquishes no security or value therefor; will be subject to the lien of such prior mortgage, to the extent of the mortgagor's original interest in the proceeds of the lands held in common. So if after the sale, the mortgagor executes a mortgage to one who has notice of the existence and non-payment of the mortgage given pending the partition.

Notice to the solicitor of such subsequent mortgagee, who prepares the securities in his behalf, is notice to the client.

A stranger purchasing at such a sale and paying the price, without notice of the mortgage executed *pendente lite*, would be protected against the mortgage.

C. owning lands in New Jersey, subject to a mortgage to W. for $4000 sold a part of the same to H., for a sum equal to the mortgage ; and H. agreed to pay W. $1000 of the price, and to mortgage to him the part so bought, for the residue. Instead of paying the $1000, H. gave to W. a mortgage therefor, on lands in New York, and then mortgaged to him the lands bought of C. for the whole $4000 ; payable in four years ; upon which W. discharged C.'s mortgage. The mortgage for $1000 was payable in one year, and as expressed in it, was collateral to the other. The New Jersey lands were not worth the $4000.

*Held*, 1. That the mortgage for $1000 was not in fact collateral to the other. 2. If it were, that it could be collected when due, without waiting for the other to mature. And, 3. When the remedy on the principal mortgage is manifestly inadequate, the collection of the collateral security will not be postponed till the former has been exhausted.

June 12, 13 ; August 20, 1844.

THIS was a bill to foreclose a mortgage executed by John P. Haff to the complainant to secure his bond for $1000. The securities were dated May 17, were executed on the 28th of September, and were recorded November 15, 1841. The mortgage was expressed to be made as collateral security to one of $4000 executed by Haff to the complainant on a tract of land in Bergen county, New Jersey. The circumstances respecting the latter mortgage are stated in the decision.

The premises conveyed by the mortgage in question, were an equal undivided ninth part of five houses and lots at the corner of Prince and Macdougal streets, in the city of New York. At the time the mortgage was executed, there was a suit for the partition of those lands pending in this court, in which Haff, his mother Abigail, and the other tenants in common of the houses and lots, were parties. A notice of the pendency of the suit had been filed, pursuant to the statute, and the complainant knew that it was in progress. Mr. Elting the solicitor who prepared the securities executed by J. P. Haff, was the solicitor and counsel for his mother in the partition suit.

The suit proceeded to a decree for the sale of the whole premises, which was entered on the 12th day of October, 1841, and the same were sold by one of the masters of this court, on the 27th of November following. J. P. Haff became the purchaser on his own account of two of the houses and lots at the sale, viz. numbers 185 Prince-street and 38 Macdougal-street, for $4975. His own share of the proceeds of the whole sale in partition, was $1901 44, from which the decree made some deductions, leaving to him about $1600 as his interest in the property, which belonged to him in the sum payable upon his bids. For the residue of his bids he executed two mortgages, one to H. Walworth, the clerk of this court, (in behalf of certain infant owners for whom he was guardian *ad litem*,) for $1901 44, on 185 Prince-street; and the other to F. W. Speck for himself and wife, the latter being one of the tenants in common, for $1500, on 38 Macdougal-street. Upon his completing his purchase in this manner, the master conveyed the two houses and lots to John P. Haff. At the same time this was closed, and on the 9th of February, 1842, J. P. Haff mortgaged both lots to his mother, Abigail Haff.

This was done to secure a precedent debt which he owed to her, and an existing liability incurred by her for him some time previously. All these securities were prepared by Mr. Elting, and were completed in his office, for which purpose Mrs. Haff, J. P. Haff, and various other parties in the suit, met there. The complainant's lien was mentioned and discussed in Mrs. Haff's presence, but one of the advisers of the parties declared it was not a lien upon the land. The complainant did not present his

mortgage to the master after the sale, or make any claim upon the fund until after the master had closed the sale and made his report.

The complainant in his bill alleged that by force of the sale and purchase by J. P. Haff, his mortgage continued to be a lien, and was prior on both the lots bought by him, to Mrs. Haff's mortgage, and that she had actual notice of his lien. He admitted that the mortgages to Speck and the clerk of the court, were prior in right to his own, being in effect given for the purchase money, *pro tanto.*

All these mortgagees were made defendants. Mrs. Haff claimed in her answer, that the master's sale divested the lien of the complainant's mortgage, and that he had no rights in the premises.

The cause was heard on pleadings and proofs.

*R. Ten Broeck* and *Clinton De Witt,* for the complainant.

*C. Stuart* and *J. A. Sidell,* for Mrs. Haff.

*Dan Marvin,* for H. Walworth, Clerk, &c.

THE ASSISTANT VICE-CHANCELLOR.—It is objected preliminarily to the complainant's bill, that the mortgage in question was given as collateral security, for a mortgage of $4000 on property in New Jersey, and that it was premature to commence this suit, until he had pursued and exhausted his remedy in that state. It is expressed in the mortgage itself that it is given as collateral security. Still I do not think that the objection is well taken.

The complainant held a mortgage against Cornell upon property in New Jersey. Cornell sold a part of the property to John P. Haff, and desired the complainant to take a mortgage from Haff on that part, for the whole of his debt, and release the residue, Haff thereby paying the consideration as between him and Cornell. The complainant assented to this, provided $1000 were paid to him in cash. Haff was unable to raise the $1000, and in order to secure its payment, he gave the mortgage which is the subject of this suit. At the same time, he executed a mortgage on the

New Jersey property which he bought of Cornell, for the whole sum payable to the complainant, including the $1000, and the latter released to Cornell the unsold portion of the New Jersey property. In effect, the latter mortgage was collateral for the payment of the $1000.

Independent of that, the mortgage in suit was payable in one year, while that in New Jersey was payable in four years. And it is alleged in the bill that the New Jersey property was not worth over $2500. There is proof that it was worth but $3000 in 1842, and on the foreclosure of the same which was pending when this bill was filed, it sold for only $1100. The entire inadequacy of that property to pay any part of the $1000 was fully established.

Under these circumstances this is not a case in which a party having a lien on two funds, will be compelled to exhaust his remedy on one of them in order to relieve a creditor who has a lien upon the other.

Assuming that the $1000 mortgage was purely collateral, the complainant sets out by showing that the principal pledge will not suffice to pay any part of it. In such a case there is no rule of equity which precludes him from pursuing his collateral remedy as soon as it is due.

Another point made by Mrs. Haff is that the complainant's mortgage never was a lien, because it was given during the pendency of the partition suit and was not recorded till after the decree of sale.

The recording of the mortgage was not necessary to make it a lien. As to the *lis pendens*, it might result in making the mortgage fruitless, but it did not prevent its becoming a lien for the time being. This will be more fully discussed hereafter.

Next as to the objection that the mortgage was intended to give a claim upon the proceeds of Haff's share in the premises, and not upon the land itself; it is sufficient to say that the mortgage declares otherwise, and the only testimony relied upon to prove it is by parol, and thus incompetent. Moreover the fact that when the mortgage was given, it was uncertain whether there would be a sale or an actual partition, shows that a lien upon the land itself was intended by the parties. This view of

the subject disposes also of the point that the mortgage was taken as a personal security only.

To proceed to the merits of the case; which are to be considered first, in reference to the complainant's rights as between him and John P. Haff, and second, as between him and Mrs. Haff.

FIRST. The effect of the mortgage as between the complainant and John P. Haff. There is no doubt but that it became a lien upon his undivided interest in the premises which were the subject of the partition suit. But it is contended that by the decree and sale this lien was wholly divested.

I agree with the defendant's counsel, that the complainant took his mortgage subject to all the consequences of the proceedings in the partition suit. But what were those consequences? Simply, that John P. Haff instead of owning an undivided interest in the premises, became the owner of two lots in severalty, subject to certain payments to his co-tenants in common, which are now represented by the mortgages to Speck and the clerk of the court. If the decree had been for an actual partition, it is not to be denied that the mortgage would have been a valid lien upon the share which was allotted to John P. Haff in severalty. But it is said the decree was for a sale, a sale has taken place, and Haff is now a purchaser under the decree, not an owner of a common interest. This is all true, but this court looking at the substance of things, cannot but see that as to Haff the change is one of mere form, not affecting his real interest in the premises. If the sale had wrought a change in the title by which Haff came in as purchaser, we should be informed of the payment and distribution of the purchase money to those having interests and liens. Yet it is conceded that the complainant who had such a lien has received nothing. It is answered by the defendants, that this is his fault, he should have claimed the proceeds from the master who made the sale.

To this, it might be replied that the master would not have been bound to take any notice of his claim, as it was not provided for by the decree. At all events, John P. Haff, who as the purchaser with notice of the complainant's lien, was bound to see it paid off and discharged out of the fund, or at least that its due proportion of the proceeds of the sale were paid to him; instead

of discharging that duty, virtually retained in his own pocket the money which he should have paid to the complainant.

As a purchaser with full notice of the complainant's lien, and bound personally as well as by such notice to see that it received its share of the purchase money, John P. Haff took his conveyance from the master subject to the effect of that lien. And as a tenant in common, using the forms of a decree and sale in partition, to turn his undivided share into an interest in severalty, the lien upon his common interest would in equity attach to his allotment in severalty. The defendant's positions on this subject are good law, but are not applicable to the circumstances of the case. If a stranger had bought one or all of the lots at the sale, without notice of the mortgage, and paid his purchase money to the master, the lien of the mortgage would unquestionably have been cut off. But as to John P. Haff, I feel equally clear in holding, that it continued a lien upon the lots which he obtained in severalty, not exceeding the extent of his interest in the proceeds of the whole lands held in common, and sold under the decree.

SECOND. The effect of the complainant's mortgage after the master's sale, as between Mrs. Haff and himself.

Mrs. Haff is not a *bona fide* mortgagee for a valuable consideration. Her mortgage was given for a precedent debt due to her from her son. The debt was in fact due from her to Cooper and she would have been compelled to pay it whether she ever obtained security from her son or not. It was her debt, although he was liable to refund it to her. When she took the mortgage therefore, she parted with no money, security or value. If the mortgage proved to be good, she would save her debt; if it were bad, she stood in the same situation that she did before.

In this respect the complainant has the superior equity, for on obtaining his mortgage he parted with his lien on the New Jersey property which Cornell retained, and he never can regain his standing as an incumbrancer there. It is urged that the complainant ought to have obtained the sum which was payable to John P. Haff under the decree. With more propriety it might be said that Mrs. Haff ought to have obtained the same money, because as a party in the partition she had notice that there was such a

sum payable to him and the time when it was payable; whereas the complainant knew nothing of the distribution.

It is true that by force of the partition, the master's deed, and the mortgage to Mrs. Haff, she acquired the legal title; but the consideration being a precedent debt and not any value paid, she acquired the title subject to the same equities with which it was charged while owned by John P. Haff. She therefore cannot set up the legal title against the prior and superior equity of the complainant.

A still stronger case is made against Mrs. Haff on the ground of notice. It is alleged that she had actual, as well as constructive notice of the complainant's lien when she took her mortgage.

As to actual notice, it is proved that on the occasion of completing the master's sale on the partition and distributing the proceeds, most of the parties in that suit met at the office of Mr. Elting, who was the solicitor of several of the defendants in the suit. Mrs. Haff and John P. Haff were there. The complainant's mortgage and its amount were mentioned and discussed in the presence of Mrs. Haff. She did not participate in the discussion so far as it appears; but considering that John is her son, that she was at that time obtaining security from him on this property, and that the complainant's mortgage on it was canvassed in her presence and hearing; it is difficult to resist the conclusion that she then learned, if she did not before know, of the existence of that mortgage.

Then as to the constructive notice. When the mortgage to the complainant was prepared, Mr. Elting was the solicitor and counsel of John P. and Mrs. Haff in the partition suit, and in fact was her general solicitor and counsel. All the papers which were executed by and between the complainant, Cornell and John P. Haff, were prepared by Mr. Elting or in his office, and he advised with the parties on the subject. He is the subscribing witness to the bond and mortgage in question.

When the mortgage to Mrs. Haff was executed, it was also prepared by or under his direction, and he acted as her counsel in the settlement of her accounts as administrator of her husband, and obtaining that mortgage from John P. Haff. Nothing

can be more full and direct than the notice which Mr. Elting had of the complainant's bond and mortgage. And as the counsel and solicitor for Mrs. Haff this was notice to her. (See *Griffith* v. *Griffith*, 9 Paige's R. 315; and 1 Hoff. Ch. R. 153; *Champlin* v. *Laytin*, 6 Paige's R. 189, 203; *Tunstall* v. *Trapps*, 3 Simons, 305; also a very strong case, decided first by the Master of the Rolls, and then by Lord Brougham; *Kennedy* v. *Green*, 3 M. & K. 699.)

On both grounds, that Mrs. Haff was not a *bona fide* mortgagee for a present consideration paid or given, and that she had notice of the complainant's mortgage, I must hold that her lien is subject to the latter.

The complainant is entitled to a decree for the sale of the premises. And his mortgage and the costs of suit, are to be paid, next after Speck's and Walworth's respectively.

As the mortgage to Walworth was due, and his rights correctly stated in the bill, there was no necessity for his putting in an answer; and the objection being taken, he must bear his own costs of the answer.